```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
UNITED STATES OF AMERICA,

                                          MEMORANDUM AND ORDER
            -against-                      05-CR-0536 (DRH)

WALTER CHERINO,

              Defendant.
-------------------------------X
A P P E A R A N C E S:

For the Government:
    Roslynn Mauskopf, Esq.
    United States Attorney
    Eastern District of New York
    One Pierrepont Plaza
    Brooklyn, New York 11201
       By: Peter Katz, A.U.S.A.

For Defendant:
    Norman Trabulus, Esq.
    666 Old Country Road
    Suite 704
    Garden City, New York 11540
```

HURLEY, District Judge

Walter Cherino ("defendant"), by his counsel, Norman Trabulus, Esq., has moved to suppress a firearm seized during the course of a search of Cherino's apartment on February 4, 2004, as well as certain oral statements made by defendant at that time.

INTRODUCTION

By bench decision issued on October 7, 2005, the Court denied defendant's motion to suppress in toto, with one exception. That one exception concerns the defendant's purported statement, made after the firearm that is the basis for the captioned indictment was found, that the subject firearm was the only one that he had. That statement by defendant was made in response to Police Officer John Oliva's ("Oliva") question

whether he had any other firearms in his apartment.  This decision will address that open item.

POSITIONS OF THE PARTIES

Defendant maintains that the statement must be suppressed because he was then in custody and he had not been provided with his Miranda warnings.  Miranda v. Arizona, 384 U.S. 436 (1966).  The government counters by arguing that "Miranda warning were not needed," Gov't's Reply to Def.'s Post-Hr'g Mem. at 14,  because "the defendant was not in custody for purposes of Miranda" at the time the utterance was made, id. at 17,  and that, even if he was in custody, the question asked and concomitant answer fall within the "'public safety exception' to the normal Miranda requirements." Id.

DISCUSSION

1. Defendant was in Custody

After the firearm was found in defendant's bedroom bureau, he was handcuffed behind his back.  At that time, there were several law enforcement personnel present.  Defendant was aware of his predicament as evidenced by the fact he uttered, in a statement already found by the Court to be admissible as a spontaneous utterance, "You got me."  Under the circumstances, it is clear that defendant was in custody for Miranda purposes.  See United States v. Newton, 369 F.3d 659, 675-78 (2d Cir. 2004).

2. Public Safety Exception not Applicable

The public safety exception is well synopsized in United States v. Newton, thusly:

> In New York v. Quarles[, 467 U.S. 649, 104 S. Ct. 2626 (1984)], the Supreme Court identified a "narrow exception to the Miranda rule," when arresting officers ask a defendant "questions necessary to secure their own safety or the safety of the public." 467 U.S. at 658-59, 104 S. Ct 2626. Recently reiterating this principle in United States v. Reyes[, 353 F.3d 148 (2003)], this court observed that "Miranda warnings need not precede 'questions reasonably prompted by a concern for the public safety' or for the safety of the arresting officers" for a suspect's answers to be admitted as evidence of his guilt. 353 F.3d at 152 (quoting New York v. Quarles, 467 U.S. at 656, 104 S. Ct. 2626). The public safety exception to Miranda does not depend upon the subjective motivation of the questioning officer. See Quarles, 467 U.S. at 655-56, 104 S. Ct. 2626. Rather, it applies so long as the questioning "relate[s] to an objectively reasonable need to protect the police or the public from any immediate danger." Id. at 659 n.8, 104 S. Ct. 2626; accord United States v. Reyes, 353 F.3d at 154.

369 F.3d at 677-78.

A review of the two cases mentioned, Quarles and Reyes, is instructive. In Quarles, a woman informed police officers that she had just been raped by an individual whom she described in great detail and that "the man had just entered an A & P supermarket located nearby and that the man was carrying a gun." Quarles, 467 U.S. at 651-52. The officers entered the store, apprehended the suspect and, upon doing a pat down search, discovered an empty shoulder holster. After handcuffing defendant, and before advising him of his Miranda rights, and officer asked him for the location of the missing firearm. Defendant "nodded in the direction of some empty cartons" and

responded, "the gun is over there." Id. at 652. The gun was thereupon retrieved and defendant placed under arrest. The Supreme Court, in holding that the statement was admissible, explained:

> The police in this case, in the very act of apprehending a suspect, were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just removed from his empty holster and discarded in the supermarket. So long as the gun was concealed somewhere in the supermarket, with its actual whereabouts unknown, it obviously posed more than one danger to the public safety: an accomplice might make use of it, a customer or employee might later come upon it.

Id. at 656.

In Reyes, a member of law enforcement had been advised by a confidential informant that defendant regularly sold narcotics and "routinely carried a firearm while conducting business." 353 F.3d at 154. A "buy-and-bust" operation was then arranged, utilizing the CI as the prospective buyer. When the defendant appeared at the prearranged site to consummate the transaction, he was placed under arrest. "The arrest took place at approximately 4:30 in the afternoon on a clear fall weekday in front of a bodega and across the street from a school. This is a graphic tableau of danger to both the officers and the public." Id.

Before handcuffing the defendant, or providing him with Miranda warnings, the arresting officer asked defendant "'if he had anything on him that [could] hurt [the officer] or anyone on

the [the] field team.'" Id. at 150. In response, the defendant indicated that he had a gun in his pocket.

Concluding that the defendant's statement was admissible, the Circuit noted that:

> The officers had a solid basis for the belief that [defendant] was armed and that the concealed weapon posed a danger to the police and to the public [citing Quarles, 467 U.S. at 667].

Reyes, 353 F.3d at 154.

Common to both Quarles and Reyes was the legitimately harbored belief by law enforcement that the defendant had a firearm, either immediately prior to his apprehension or simultaneously therewith, and that such firearm represented a danger either to the public and/or the police.

In contrast, here, unlike Quarles, the arrest site was a private apartment which could have been readily secured, the possibility of an accomplice had already been dispelled via a lengthy search, and the officers had no reason to believe that there was an unaccounted for firearm in the immediate vicinity. And unlike Reyes, defendant here was handcuffed in the presence of several officers and, again, none of the officers had any reason to believe that there was an undiscovered firearm.

In urging a contrary conclusion, the government proffers that Oliva was justified in asking the question that prompted the defendant's response "for the protection of the people in the apartment," including the two juveniles. In that regard, the Court recognizes that in Quarles the defendant was

handcuffed when asked to disclose where in the supermarket he had disposed of the firearm because, inter alia, "a customer or employee might later come upon it." 467 U.S. at 657. However, there is nothing in the evidence to suggest that either of the two juvenile females found in defendant's bedroom were likely to stumble upon a second firearm in the apartment. To the contrary, both were then in the custody of police and probation officers who were in the process of executing PINS warrants and endeavoring to reunite the children with their families.

It must be remembered that the public safety exception is narrow in scope. Quarles, 467 U.S. at 658. The mere fact that one weapon was found in the defendant's apartment, standing alone, is not sufficient to trigger its application. Indeed, "[t]here is nothing [in the present case] that separates these facts from those of an ordinary and routine arrest scenario." United States v. Mobley, 40 F.3d 688, 693 (4th Cir. 1994). No explanation has been provided "as to what extraordinary circumstances prompted this question," and this Court concludes that there was none. Id.

In sum, defendant's motion to suppress the second of defendant's two incriminating statements made on February 4, 2004 is granted for the reasons indicated.

SO ORDERED.

Dated: Central Islip, New York
November 4, 2005

_____/S/_____
DENIS R. HURLEY, U.S.D.J.